UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kessiena Aya-Olabisi,

       Plaintiff             Case No:

v.

                             **COMPLAINT**
                             JURY TRIAL DEMANDED

University of Colorado Anschutz Medical Campus

       Defendant

Plaintiff Dr. Kessiena Aya-Olabisi ("Dr. Aya-Olabisi"), by and through her undersign attorney Michael Fondungallah, for their complaint against University of Colorado's Anschutz Medical Campus ("UC") Defendant, states and alleges as follows:

## PARTIES

1. Plaintiff, Dr. Kessiena Aya-Olabisi is a resident of Hennepin County in the state of Minnesota residing at 95 S 10 Street Apt 1107, Minneapolis, MN 55403.

2. Defendant, University of Colorado Anschutz Medical Campus is a program at the University of Colorado's School of Medicine located at 1380 Lawrence Street, 14th Floor, Denver, CO 80204.

## JURISDICTION & VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. § 1331 in that this case arises under federal law, specifically, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e; and 42 U.S.C. § 1981.

1

4. Venue is proper in the District of Minnesota because the unlawful employment discrimination and retaliatory actions giving rise to Dr. Aya-Olabisi's claims occurred in Minnesota.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Dr. Aya-Olabisi exhausted her administrative remedies. On or about April 03, 2025, Dr. Aya-Olabisi filed a timely administrative charge against UCFP with the Equal Employment Opportunity Commission (EEOC) claiming discrimination and retaliation based upon race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000 e, et seq..; and the Minnesota Human Rights Act.

6. On or about December 16, 2025, EEOC and on behalf of MDHR issued and mailed a Notice of Right to Sue letter to Dr. Aya-Olabisi.

## STATEMENT OF THE CASE

1. Dr. Kessiena Aya-Olabisi, D.O., holds an active license to practice medicine in Minnesota and is an Orthopedic Spine surgeon.

2. Dr. Aya-Olabisi enrolled in the University of Colorado School of Medicine's Spine Fellowship Program on August 1, 2020, after completing her orthopedic residency at the University of Texas in Galveston in July 2020.

3. In November of 2020, there was a patient safety issue which triggered an investigation. As it is customary during investigations, on or about November 24, 2020, Dr. Aya-Olabisi was suspended for 30 days by her program director Dr. Christopher Kleck, pending the outcome of the investigation.

2

4. A male Caucasian physician who was responsible for the patient issue was not suspended pending an investigation.

5. The UC leadership did not pursue investigating the patient safety issue and did not speak with Dr. Aya-Olabisi and never spoke with her regarding any investigation, even though she had demanded a separate investigation.

6. When Dr Aya-Olabisi sent information to Dr. Kleck showing that she was being treated differently than her white male counterpart in the patient safety issue, Dr. Kleck promptly called Dr. Aya-Olabisi and personally rescinded the suspension.

7. On December 15, 2020, the UC determined that Dr. Aya-Olabisi's suspension would end and her academic standing would change from good standing to probationary standing.

8. Dr. Aya-Olabisi declined to sign the probation document, because she did not agree with its terms and conditions.

9. On January 21, 2021, the UC determined that Dr. Aya-Olabisi would continue probation. The UC let her know that if she doesn't comply with the conditions of the probation, it may continue her on probation or it may result in her termination from the program.

10. On or around February 4, 2021, Dr. Aya-Olabisi was involved in a routine patient case. After surgery, the patient experienced a neurological deficit, which prompted a root cause analysis by the Department of Veterans Affairs Medical Center.

11. The investigation concluded that Dr. Aya-Olabisi was not at fault, and Dr. Aya-Olabisi was never relieved of her duties. Despite this finding, Dr. Kleck unilaterally suspended Dr. Aya-Olabisi, claiming he needed to conduct his own investigation.

12. On February 11, 2021, the UC fully suspended Dr. Aya-Olabisi for a second time from clinical, educational and research duties, for 30 days.

13. Dr. Kleck suspended Dr. Aya-Olabisi to investigate why she was not available on a pre-approved day off, even though, months prior, her vacation request had been made and approved online.

14. Dr. Kleck initiated adverse disciplinary action against Dr. Aya-Olabisi without adhering to the University's own published disciplinary procedures. Dr. Aya-Olabisi was not provided meaningful notice of the allegations, a fair opportunity to respond, or a neutral decision-making process.

15. Dr. Aya-Olabisi complained to the University's Office of Diversity, Equity, and Inclusion about the discriminatory and retaliatory conduct from her Program Director, Dr. Kleck. The University recommended that she file a formal complaint which she did.

16. On February 18, 2021, the UC ended Dr. Aya-Olabisi training agreement from the Orthopedic Spine Fellowship. In March, Dr. Aya-Olabisi and the UC agreed on a voluntary resignation and neutral reference letter.

17. Despite this formal agreement, Dr. Kleck took further steps to hinder Dr. Aya-Olabisi's career. In June 2021, Dr. Kleck claimed during an investigation by the

4

University of Colorado into allegations of discrimination that he rescinded Dr. Aya-Olabisi's fellowship because Dr. Aya-Olabisi did not have a DEA license.

18. When Dr. Aya-Olabisi contacted UC to verify her credentials, she was told by staff that they could not find information that she ever participated in the fellowship programs.

19. Dr. Aya-Olabisi attempted to obtain her case logs, but she was denied access to logs and was told that no records exist.

20. Dr. Aya-Olabisi attempted to obtain a reference letter from one of the seven surgeons that she had worked with to verify that she was in the fellowship program but was ignored.

21. Dr. Aya-Olabisi also attempted to get UC to provide credential information to hospitals and clinics that she was applying to and was ignored.

22. Recruiters tried to verify her attendance at the UC, but UC staff denied that she ever participated in the program.

23. Since UC did not acknowledge her attendance in the program, Dr. Aya-Olabisi separated from the University of Colorado in March of 2021.

24. Dr. Aya-Olabisi completed her initial licensure and submitted it to the Maryland medical licensure Board. She was approved and received her medical license on June 14, 2021.

25. In her application she did not mention UC since it had informed her that it did not have a record of her being in its program.

26. In 2022, Dr. Kleck escalated his actions by reporting Dr. Aya-Olabisi to the medical boards of Minnesota, Maryland, and California.

27. In January of 2022, Dr. Aya-Olabisi applied to work with Fairview Health Systems in Minnesota.

28. Instead of providing information to Fairview Health Systems in Minnesota, as requested, on February 7, 2022, Dr. Carol Rumack of the University of Colorado School of Medicine filed a complaint with the Maryland Board of Physicians.

29. Dr. Rumack alleged in her complaint that Dr. Aya-Olabisi had submitted a letter for credentialing purposes at Fairview Health Systems in Minnesota that was not the final letter that the UCSFP provided to her upon separation from the program, and falsely stated that this couldn't be an error because Dr Aya "did not make any drafts".

30. On August 1, 2022. Dr. Aya-Olabisi was notified that the Board had opened a full investigation into this matter regarding Fairview and the University of Colorado.

31. Following the UC complaint, on May 18, 2023, charges were issued under the Maryland Medical Practice Act in reference to Dr. Aya-Olabisi.

32. A hearing was held on February 15-16, 2024, before the Office of Administrative hearing at the Maryland Department of Health with Dr. Christopher Kleck as a witness.

33. Following the hearing the administrative judge decided that Dr Aya-Olabisi violated their professionalism standards. Both the Minnesota and California medical boards made no such findings and dismissed all the allegations.

6

34. On January 27, 2025, Dr. Aya-Olabisi was informed by hospital credentialing bodies in Minnesota that once again, the University of Colorado and/or Dr. Kleck are misrepresenting the facts in a manner that paints a false picture of Dr. Aya-Olabisi's practice.

35. Dr. Aya-Olabisi continues to practice in Minnesota as an orthopedic and spine surgeon, with the state licensing board formally dismissing the same allegations against her.

36. The ongoing contradictions in Dr. Kleck's and UC's statements and actions have only further complicated Dr. Aya-Olabisi's ability to practice medicine without undue hardship.

37. Dr. Kleck and UC in retaliation have failed to timely or accurately verify Dr. Aya-Olabisi's training status despite having documentation confirming completion of required rotations.

38. The continued false reports and misrepresentations have created unnecessary obstacles in Dr. Aya-Olabisi's career, causing damage to her reputation, undue stress, and denial of career opportunities.

## FIRST CAUSE OF ACTION

## RACE DISCRIMINATION IN VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT

39. The preceding paragraphs are incorporated herein as though set forth in full.

40. Title VII prohibits employers from discharging or otherwise discriminating against

7

an employee with respect to his compensation, terms, conditions, or privileges of employment of the employee's race. 42 U.S.C. § 2000e-2(a)(1).

41. UC suspended Dr. Aya-Olabisi because of her race when it did not suspend a Caucasian male who was involved in the alleged patient issue.

42. UC discriminated against Dr. Aya-Olabisi based on her race in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

43. The effect of the practices complained about above has been to deprive Dr. Aya-Olabisi of equal employment opportunities and otherwise adversely affecting her status as an employee because of her race and origin.

44. As a direct and proximate result of UCFP's wrongful and discriminatory conduct, Dr. Aya-Olabisi sustained lost wages and benefits, medical expenses, mental anguish, other pecuniary and nonpecuniary damages, attorney fees, and other recoverable damages under Title VII, in an amount to be determined at trial, in excess of $75,000.

## SECOND CAUSE OF ACTION

## GENDER AND SEX DISCRIMINATION (42 USC § 2000e-2)

45. The preceding paragraphs are incorporated herein as though set forth in full.

46. At all material times, UC was an employer within the meaning of 42 USC § 2000e (b).

47. UC discriminated against Dr. Aya-Olabisi with respect to the terms and conditions of her employment, including compensation, because of her gender and sex as alleged.

48. UC suspended Dr. Aya-Olabisi because of her gender and sex when it did not suspend a male physician who was involved in the alleged patient issue.

49. As a result of UC's unlawful employment actions, Dr. Aya-Olabisi suffered and continues to suffer economic and noneconomic damages in an amount to be proved at trial.

50. Dr. Aya-Olabisi is entitled to an award for past lost wages and benefits, future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses.

51. Dr. Aya-Olabisi is entitled to an award for noneconomic damages for her emotional distress. To the extent any amount awarded to Dr. Aya-Olabisi is for damages occurring prior to the entry of judgment, Dr. Aya-Olabisi is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

52. Dr. Aya-Olabisi is entitled to post-judgment interest on all damages, costs, and attorney fees from the date of judgment until the date paid.

53. Pursuant to 42 USC § 2000e-5, Dr. Aya-Olabisi is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein. Because UC's actions were malicious and/or reckless, Plaintiff is entitled to punitive damages.

Dr. Aya-Olabisi also seeks an award for such additional relief as justice may require.

**THIRD CAUSE OF ACTION**
**RETALIATION – 42 USC § 2000e-3**

54. The preceding paragraphs are incorporated herein as though set forth in full.

55. Title VII prohibits employers from retaliating against an employee because the employee has opposed any practice made an unlawful employment practice by Title VII. 42 U.S.C.§ 2000e-3.

56. Dr. Aya-Olabisi engaged in protected conduct under Title VII, 42 U.S.C. § 2000e-3, by opposing UC and Dr. Kleck's' discriminatory and retaliatory conduct toward her because of her race, gender and sex, and by notifying the University's Office of Equity of the same.

57. Dr. Aya-Olabisi engaged in protected activity by raising concerns regarding fairness, policy compliance, and discrimination.

58. Shortly after Dr. Aya-Olabisi engaged in said activity, UC escalated adverse actions, including prolonged suspension, obstruction of credentialing, and interference with professional advancement.

59. After filing a formal discrimination complaint, the Program Director rescinded her fellowship in its entirety in writing. When Dr. Aya-Olabisi sought verification of her time in the Fellowship Program, staff claimed they had no record of her participation in the program.

60. UC and Dr. Kleck violated the law by retaliating against Dr. Aya-Olabisi because she opposed practices forbidden under Title VII of the Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e-3.

61. As a direct and proximate result of UC's wrongful and retaliatory conduct, Dr. Aya-Olabisi sustained lost wages and benefits, medical expenses, mental anguish, other pecuniary and nonpecuniary damages, attorney fees, and other recoverable damages under Title VII, in an amount to be determined at trial, in excess of $75,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Dr. Aya-Olabisi requests that the Court enter judgment in their favor and against Defendant UC as follows:

62. Grant a judgment in favor of Dr. Aya-Olabisi in an amount to be proven at trial, more than $150,000 for emotional distress, mental anguish, humiliation, and loss of professional reputation.

63. Order UC to pay statutory punitive damages for its malicious and reckless conduct described above, in amounts in excess of $150,000.00 to be determined at trial.

64. Order UC to pay an award of actual damages in excess of $150,000;

65. Award Dr. Aya-Olabisi costs and reasonable attorneys' fees related to this action.

66. Grant such further relief as the Court deems just, proper, and equitable.

Dated: February 25, 2026

s/Michael Fondungallah

Michael Fondungallah (310748)

Fondungallah & Kigham, LLC

2499 Rice Street Suit 154

Saint Paul, MN 55113

Tel: (651) 482-0520

Fax: (651) 482-0530

mfondungallah@fondlaw.com

Attorney for Plaintiff
